## ARESON vs. ARESON.

The will of a testator, who died seized and possessed of real and personal estate leaving a wife and children, contained a clause in these words: " I give and bequeath unto my beloved wife, all my real estate, one clock, and the interest of five hundred dollars *during her lifetime*;" and other parts of the will disposed of the residue of the property among the children, but the real estate was not again mentioned. *Held*, that the words " during her lifetime" qualified all the subjects antecedently mentioned in the sentence, and that the widow consequently took an estate for life only in the lands.

On error from the supreme court. John R. Areson prosecuted Benjamin R. Areson in the court below in ejectment, for one undivided fifth part of certain lands in Flatbush, in the county of Queens. The jury found a special verdict, and the court rendered judgment for the defendant. For a statement of the facts and the opinion of the supreme court, see 5 *Hill*, 410. In order to understand the discussion here it will be sufficient to state that the plaintiff claimed title as one of the heirs at law of Benjamin Areson deceased, who died seized, in 1841, having shortly before his death made his will, containing the following clause: " *Second.* I give and bequeath unto my beloved wife, Mary, all my real estate, one clock, and the interest of five hundred dollars during her lifetime." The remainder of the will contained sundry dispositions of *personal estate*, which are sufficiently stated in the opinions given in this court; but no further notice was taken of the testator's lands. The widow died in 1842, and unless she took an estate in fee under the will, the plaintiff was entitled to recover.

*W. J. Cogswell & D. Wood*, for the plaintiff in error.

*J. W. Gerard*, for the defendant in error.

BARLOW, Senator. In considering this case, both the supreme court and the defendant's counsel seem to render the uncertainty

of the law more uncertain, by resorting to the speculative and uncertain rules of grammar.

It would appear as if the law of the land and the principles of grammatical construction were identical; for if we wish to know the law governing a will, we are told to look for the intent of the testator; and if we would be instructed how to parse or punctuate the same document according to the rules of syntax, we should be directed first to seek the meaning of the testator. Punctuation determines nothing. It is true that by it sentences are assorted, and the intent is more readily presented to the eye; or it may be it is entirely perverted and destroyed. All depends upon the intent of the writer. Intent is every thing; and very little reliance should be placed upon the capricious rules of grammar. By travelling this road to declare and carry out the law of the land, we associate in one grand group of oracles, not only the profound jurists of former and present ages, but also the grammarians and critics of the present day, with all their learning in regard to *commas, semicolons,* &c.; and the strife comes up between the schools of Coke and Murray. The learned chief justice in his opinion says: "The grammatical construction of the language proves the claim of the plaintiff." If by this he means that the grammatical construction of the will carries out the true intent of the testator, then there can be no question as to the law, if we agree with him in this view. If the clause ran thus: "I give to my wife all my real estate one clock and the interest of five hundred dollars during her lifetime," it seems very plain that all would agree that only a life estate was given. The language would not be broken by any punctuation, and the mind would not be arrested by any philological speculations. But it is said that a *comma* is used after the word *clock,* and that the words of limitation have reference back only to the first preceding antecedent, the *interest* of five hundred dollars. But certainly no rules of grammar will justify any such view. The words of limitation refer to all the antecedents, as the easiest sense to the reader, and this is the sense which should govern us. But to carry out the construction given by the supreme court, there

should be a conjunction after the word *estate*, to arrest the further continuation of the same sense beyond the word *clock*; and then commence the limited and new sense by another conjunction, with different punctuation or no punctuation at all; thus, "I give to my wife all my real estate and one clock, and the interest of five hundred dollars during her lifetime."

Thus much for the grammatical construction of the sentence, which I think is obviously against the views of the supreme court.

But there are some other considerations bearing upon the subject. The widow would, by law, if no will had been made, have had a life estate and no more, in one-third of the real estate. We may well suppose that the testator thought best to let her have the use of it all—the clock in the homestead and the interest of five hundred dollars during her lifetime, and on her decease to have it go to his heirs.

I am therefore of the opinion that she took only a life estate in the lands devised, and that the judgment of the supreme court should be reversed.

HARD, Senator. The words in the will in question necessary to be considered in determining this case are the following: "I give and bequeath unto my beloved wife Mary, all my real estate, one clock, and the interest of five hundred dollars during her life." The question is whether Mary Areson, the wife of the testator, takes a life estate or a fee simple in the real property. The court below held that she took the latter estate. I agree with the learned justice who delivered the opinion of the court below, that "The grammatical construction of the language proves the claim of the plaintiff." But when he says, "I think the words 'during her lifetime,' should be restricted in their application to the last preceding subject, 'the interest of five hundred dollars,'" I think he does violence not only to the plainest rules of grammar but to the common rules of construction. Having arrived at the true grammatical construction of the instrument, the presumption is that we have discovered the intention of the testator; and any further speculation is precluded.

Areson *v.* Areson.

unless it appears by the context or otherwise that such intention is repugnant to sound policy or some well settled rule of law. It is not pretended that any such repugnance exists in this case. On the contrary this construction harmonizes with a sense of common justice and with the almost universal rule of distribution of property in this country. It will be seen that this rule is by no means disregarded by the testator in the distribution of the personal estate. Equality is conscientiously observed in every part of the will. The policy of the law in this country as well as in England favors the descent of property of the intestate to the heir; and the right to make a will is a privilege of the testator. That the intention of the testator is to give to the property a different direction from that prescribed by the common rules of descent, is a fact not to be implied but affirmatively made out, or clearly expressed in the will. (*Roe* v. *Blackett, Cowp.* 235; 1 *Bro. C. C.* 441.) The intent to exclude the heir must be clear and manifest. (*Moone* v. *Heaseman, Willes' R.* 141.) And that intent must be collected from the words used, and not from conjecture. (*Hay* v. *The Earl of Coventry*, 3 *T. R.* 83, 86; *Moor* v. *Denn*, 2 *Bos. & Pull.* 247; *Wheaton* v. *Andress*, 23 *Wend.* 452.) If the doctrine contended for by the defendant and sustained by the court below be true, then the operation of the will is, to disinherit the heirs, a conclusion not to be inferred from doubtful terms, but requiring unequivocal language. The interpretation of the clause upon which this question arises authorizes no such inference, but the whole devise taken together warrants the conclusion that the testator intended to devise to his wife a life estate only. The judgment should therefore be reversed.

Johnson, Senator. Since the adoption of the revised statutes, words of inheritance are not necessary in a grant or devise to pass all the estate or interest of the grantor or testator, in real estate; but such estate or interest shall pass, "unless the intent to pass a less estate or interest, shall appear by express terms, or be necessarily implied in the terms of such grant." (1 *R. S.* 748, § 1.) If the punctuation of the clause of the will according to

the printed case be disregarded as too unstable a foundation on which to ground a legal decision, then the express terms of the will are, that only a life estate in the premises passed to Mrs. Areson the widow. I do not feel willing to rest my opinion upon the placing of a comma in this sentence, which may or may not have been put there by the draftsman of the will, and if inserted by him, may have been done with or without the knowledge of the testator. It certainly cannot be pretended that the testator meant to designate his wishes by such fragile proof, especially when it is considered that this sign could have easily been removed from one part of the sentence and reinserted in another, as interest might dictate. The plainest rules of grammatical construction require, that the qualifying words, "during her lifetime," at the termination of the sentence, should be repeated with each substantive antecedent. If we look to other parts of the will to ascertain the intent of the testator respecting the disposition of his real estate, there will be found nothing to enlighten the mind. It is true, conjectures may arise as to the reason of mention being subsequently made of the personal, and not of the real estate. But the same conjectures may be raised, why the testator did not add words of inheritance after the words "all my real estate," or some other explanatory words, if it was his intention that his wife should take a fee. Again, it would seem strange that the testator should, in the same sentence, make a devise for life and in fee without adding different qualifying words. But abandoning conjecture, and reflecting that a somewhat aged man might reasonably confide to his wife the ultimate disposition of his real estate, when he was at the same time particular in disposing of his personal property, it will be found that the authorities are clear that no intendment can be made contrary to the plain and usual sense of the words of a will, unless other parts of it show that the testator could not have intended that the language should have its ordinary operation. (7 *Vesey*, 369.) Again, in *Moone* v. *Heaseman*, ( *Willes' R.* 141,) it is laid down that " the intent of the testator ought to appear plainly in the will itself, otherwise the heir shall not be disinherited." Upon these salutary prnciples, long established

in the construction of wills, and finding nothing in the whole instrument under consideration upon which to base a reasonable opinion that the testator intended his wife to take a fee in his real estate, I feel myself compelled to differ from the supreme court and to vote for a reversal of the judgment. The plaintiff is entitled, upon the special verdict, to judgment for one-fifth of the premises described in the declaration.     :    ... -

PORTER, Senator. A case of not unfrequent occurrence is here presented, in which the court is required to declare the meaning of a testator, where by his will he has failed, through the ignorance or carelessness of his scrivener, to express in plain and explicit terms the disposition of his estate. The rules for the guidance of courts are well established, and appear at the present day to furnish no matter of controversy. It is in the application of those rules to the ever varying facts of cases, that the advice of counsel and the judgments of courts are so often found to differ. All authorities concur in this, that the intention of the testator shall control in the construction of a will; and that that intention must be gathered from the language of the will, and of the whole will, taken in connection with the subject matter of the devise, and the objects of the testator's bounty. On this point the revised statutes are supposed to speak the general language, and to carry out the general intention of testators, where they declare that every devise of real estate shall pass all the interest that the devisor had therein, unless by express terms or necessary implication, it shall appear that he intended to pass a less interest. (1 *R. S.* 748, § 1.) This provision is based upon the supposition, which is doubtless well founded, that whenever a devisor intended to give a less interest in any part of his real estate, than he had, he would be much more careful to make that intent manifest from the language he would use, than when he intended to devise his whole interest.

The solicitude generally manifested by courts to protect the interest of heirs at law, whenever a technical objection could be made available for that purpose, or a plausible doubt of the in-

tention of the testator could be suggested, has probably caused the statutory provision to be made, by which the rights of heirs as such are divested of all special protection and preference. It must, therefore, now appear from the language of the will, that the testator had the interest of the heirs in his mind ; and that he designed, when devising his real estate to another than his heirs, that the remainder of his estate in the real property devised, after satisfying the particular devise of less than his whole interest, should go to his heirs. The legal presumption is that, when a testator devises less than his whole interest, he knows that the law gives the remainder to his heirs.

In the will before us, the testator first directs his executors to pay all his just debts; and then devises to his wife " all his real estate." The remainder of the will is occupied exclusively in the disposition of his personal property. There is nothing in the whole will, except that single clause, that shows that the testator had any real estate. It is therefore clear that the testator did not intend to give any directions in respect to any interest in his real estate not devised to his wife. In regard to his personal property he was particular, not only to give certain specific portions to each of his children, and the remainder to be equally divided between them ; but he directed his executors to place at interest on landed security, the portions of his personal property bequeathed to his two married daughters, for their use during their lives, and after their deaths to be equally divided between their children. This shows that when he bequeathed an interest for life in his personal property, he took care to dispose of the remainder.

The clause in the will that has occasioned this controversy is this : " I give and bequeath unto my beloved wife Mary all my real estate, one clock, and the interest of five hundred dollars during her lifetime." The plaintiff contends that the qualifying phrase at the conclusion, " during her lifetime," applies to each member of the sentence, and gave to the widow only a life estate. This is the only question in the case. It cannot be disputed that a grammatical construction of the sentence will require us to determine that she took only a life estate. But in

examining wills to discover the true intention of testators, courts are bound to disregard the rules of grammar, where an adherence to them will violate the meaning of the testator. A very slight alteration of this sentence, as by introducing the word "and" before "one clock," so that it would read "I give to my beloved wife all my real estate, and one clock and the interest of five hundred dollars during her natural life;" and then the grammatical construction would give her a fee. The legal construction of wills should not depend upon a matter of so little importance.

In *Doe* v. *Martin*, (4 *T. R.* 65, 6,) Lord Kenyon says, "Courts of law, in construing acts of parliament and deeds, must read them with such stops as will give effect to the whole." And he applies the rule to a deed of settlement where the language is this, "to the use of all and every child or children, equally, share and share alike, to hold the same, if more than one, as tenants in common, and not as joint tenants, and if but one child, then to such only child, his or her heirs or assigns forever." The question was, whether the children, there being several, took a fee. The grammatical construction would require that the words of limitation at the close of the sentence should be applied to the immediately next preceding word, child. If so, then the children took but a life estate. Still the court decided, that for the purpose of carrying out the intention of the parties to the deed of settlement, they would disregard the rules of grammar, and connect the words of inheritance with the words child or children in another part of the sentence, by reading the intermediate clause as in a parenthesis, and that although it read "his or her," in the singular number, instead of "his, her or their." This is a much stronger instance of such disregard of grammatical rules, than is necessary to give the widow in this case a fee. If instead of a *comma* after the word "clock," there should be put a colon, then the words "during her lifetime" would apply to the interest of the money only. From the perusal of the whole will, I cannot resist the conclusion, that the testator intended that his wife should take a fee in his real estate; and as it does not appear by the express terms

of the will, as I read it, nor by necessary implication, that the testator intended she should take an estate less than a fee, that being the estate he had in the premises, I think she took a fee, and consequently that the judgment of the supreme court should be affirmed.

SPENCER, Senator. The chief justice of the supreme court has truly said that "the grammatical construction of the language proves the claim of the plaintiff;" and he cites authorities which well sustain him. I agree also with the chief justice that "we must seek for the intention of the testator by considering the nature of the subjects which he had in his mind, as well as the order in which they are mentioned." No one can deny that the nature of the subjects mentioned equally admits of a qualified as well as an absolute gift. "All my real estate," may be given in fee or for life; "one clock" may be given absolutely or for life, and the "interest of five hundred dollars" may be given for a limited period, as one year, or for life. Indeed it seems to me that if the interest of five hundred dollars had been the only subject mentioned in this clause of the will, that its true interpretation, without the words "during her lifetime," would be that it was so long payable, and not for any shorter period. These qualifying words therefore only express that which, without them, the law would imply in respect to this subject. Without them there is no doubt but that the widow would have taken a fee in the land, and an absolute title to the clock. If they relate to these subjects also, then the duration of her title and right is the same in respect to all the subjects mentioned in this clause of the will. This it seems to me is the grammatical, legal and natural interpretation of the language of the will. The intent of the testator to exclude the heir must be clear and manifest, and must be collected from the language employed and not from conjecture. On a careful perusal of the will, I have been unable to find any such intention expressed, and I do not feel at liberty to imply such intention from the fact that the real estate is no where else mentioned in the will, and that the personal estate is carefully bequeathed. If we are at liberty to

indulge in conjecture we may suppose that the testator was satisfied to allow the statute regulating descents to declare the equal rights of his children.    But we are not thus at liberty.    The will operates as a conveyance, and must depend upon its language for its interpretation and effect.

This case may not be free from doubt and difficulty; but for this very reason the heirs at law should not be excluded, and the estate should be allowed to descend equally to them.

The judgment of the supreme court should, in my opinion, be reversed, and judgment should be given for the plaintiff upon the special verdict.

WRIGHT, Senator.    Upon the best consideration I have been enabled to give the language of this will, I cannot concur in the conclusion of the supreme court.    It is a case in which no essential aid or help can be derived from books or adjudged cases; and in general, I am unwilling to subject the intention of a testator, who has employed plain intelligible words to express such intention, to the uncertain test of adjudged cases, arising upon different language and attended with different circumstances in the condition and property of the testator.    When the courts have passed upon the meaning of particular words in a will, every testator is presumed to use such words in reference to their legal signification; and in interpreting the language of a testator who has employed such terms, judges and courts, for the sake of harmony and security in the disposition of real estate, will rigidly adhere to the adjudged construction. But to attempt to seek out the mind of a man, who sits down to the solemn duty of making a disposition of his own property, by resorting to the judgment of a court, in a case not precisely parallel in all its facts and circumstances, is making the intention of the testator subject to the presumed intention of some other person.    The intention is to govern, and that intention must in all cases when the language is unambiguous and plain be gathered from the will itself.    The judge who sits in judgment upon the act of a testator, places himself in the position and circumstances of such testator, so far as his written

declaration will enable him to do it ; and even then it is a hazardous duty, to speak for, and over again, what has been said years before by the dying man. In this case the whole difficulty lies in giving effect to the concluding words of the sentence in this devise—" *during her lifetime.*" Do they apply to the entire preceding part of the devise, or must they be limited to the last antecedent—"*the interest of five hundred dollars?*" The grammatical construction of the sentence admits of no doubt—and so the learned judge admits in his opinion. It clearly makes the words "during her lifetime," qualify the preceding sentence, and embraces as well the *real estate and clock,* as the interest of the *five hundred dollars.* It may not be usual and perhaps may be regarded as very singular, that a man should create a life estate in a clock. Yet I am not at liberty to say that this old man had not received this old time-piece from his venerable parent and that he regarded it as a part and parcel of that inheritance which should be preserved and continued in his family until old age and use rendered it unfit for its customary resting place behind the door, and that he was willing to confide this family relic to his widow while she survived her aged companion, and then it should again serve to tick away another generation with some other member of his family. This is not an improbable version of the testator's thoughts as he included the clock in the devise to his wife. And being entirely reconcilable with his language, as to the real estate and interest money, it can be adopted without doing violence to either intention or words. It may not be strictly a legal presumption that every man understands grammar, as it certainly is not true that every man who draws a will or writes a book, does frame his sentences with strict grammatical accuracy. But when a man has so constructed a sentence, that its proper interpretation can only be satisfied by adopting the strict grammatical construction, it is a fair and just assumption that he who so framed his language well understood its purport and effect. In this case the testator has employed language which, in its grammatical sense, fully sustains the idea that he intended to give a life estate to his wife in both his real and personal estate ; and we, I think, should as-

Areson *v.* Areson.

sume that he well understood the force of the language employ-
ed in connection with all the objects of his bounty to his wife.

This construction is also in accordance with a just and equi-
table as well as humane disposition of his property. He was
desirous of making ample provision for his wife during her life.
She was to enjoy the entire use and profits of his real estate,
and in the absence of any evidence as to its value, I assume that
such yearly use together with the interest of five hundred dol-
lars annually would make a liberal provision for the declining
years of his aged companion. He had five children, and among
them were three daughters; two were married and one single.
To these he devises in equal portions the *residue* of his personal
estate, and leaves the law of descents to dispose of the real estate
after the death of his wife—thereby ultimately securing to his
entire family, an equal participation in his estate. I am for a
reversal of the judgment of the supreme court.

VAN SCHOONHOVEN, Senator. I am of the opinion that by
the will, an estate in fee absolute was given to the wife, in the
whole of the real estate. The considerations which bring me
to this conclusion are as follows, to wit:

First, because, while there is an unquestionable and clear
grant or devise of "all the real estate" of the testator, in the
clause of the instrument above quoted, there are no express
terms therein declaring or indicating an intent to pass any estate
or interest less than an estate in fee; nor can any such intent be
"necessarily implied" in the terms of the grant. (1 *R. S.* 748,
§ 1.) In my view, the words "during her life," at the end of
the clause, have reference clearly to the preceding words, "and
the interest of five hundred dollars," and to these only. I judge
so, first, because, if we disconnect the said words "during her
life" from those immediately antecedent, and apply them to the
clause generally, so as to embrace real estate, clock, and interest,
we must suppose the testator to have given an uncertain, indefi-
nite, and unascertainable amount of interest, which bequest of
interest, if not void at law for uncertainty, might be so interpre-
ted by the executors of the estate, or by the courts, as to be ren-

dered just about equivalent to no bequest of interest money or cash, at all. And, secondly, because I think the punctuation, or grammatical division, of the whole clause in question, very strongly, if not necessarily, indicates it to have been the understanding and intent of the testator, that the bequest for life should be restrictive only as to such interest. The construction contended for by the plaintiff in error, would compel us to interpret the clause under consideration as though it were thus written, to wit: " I give and bequeath unto my beloved wife, Mary, during her lifetime, all my real estate, one clock, and the interest of five hundred dollars." Had the clause been thus expressed, we might have conjectured, fancied, " guessed," as to its meaning ; but by no possible means, either from any thing within or without the will, could we have at all satisfied ourselves as to the amount of interest intended to be bequeathed. All we should have been able, with any degree of confidence, to say, would be, that he had given some amount, during the life of the widow. Interest for any, even a moment of time, would have satisfied the bequest. It may be said, that the construction contended for by the defendant in error may be open to the very same objection. I think not. By an unprejudiced, impartial, reasonable, common sense interpretation of the language, as it stands in the will—" the interest of five hundred dollars during her lifetime"—would give nothing more or less than the annual interest upon that sum for life. The punctuation of the clause is not, it is true, a circumstance or consideration upon which alone we should base an interpretation of its phraseology, and yet I think some importance is to be attached to it, in this instance. The printed copy of the will, as given in the error book, shows five commas in the clause under notice. It was stated by counsel upon the argument, in answer to an interrogatory upon this point, that no comma is found in the original will after the word " dollars" in the last line of the clause. Now, the comma is designed and always used to denote a pause in reading. We are not then at liberty to read the words succeeding the last comma in the sentence without uttering them as it were in a single breath. Thus reading them, I

am satisfied that the idea conveyed to the hearer or the reader, would be precisely the same as though the testator had amplified his language by saying, " I give to my wife all my real estate, I give to her one clock, and I give to her the interest of five hundred dollars for life."

Second. I think an estate in fee, and not a mere life estate, was conveyed by the will, because any other interpretation of the clause we have been considering, leaves the fee of the real estate undisposed of. Not a word appears in the instrument relating to the real estate, save what is expressed in this clause Is it reasonable to suppose the testator would have disposed of his land and dwellings for life, and have descended to the par ticularity of disposing, for life too, as the plaintiff in error insists, of his clock, and the interest of his money, and yet have remained silent as to the ultimate and more important disposition of the fee itself, of all his real estate? The idea is not to be entertained for a moment.

In the third and last place, I think there is some evidence that the testator designed to convey the fee to his wife, in the fact that he has been very particular and cautious not only to dispose finally and forever of all his personal estate, but has also clothed his executors with full powers to sell the same for the purposes of distribution as to some of the children, and of investment as to others; excepting, however, from such power of sale, all personal property which he had therein before willed away. He directs the portions of two of his daughters to be placed at interest, on land security, for their use during life, and after death to be equally divided between their children. Two inquiries suggest themselves. First: Would the testator, in the exercise of a sound judgment, or in the possession of a sound mind, be thus particular and minute as to personal property, and yet be thus indifferent or careless as to real estate, supposing a life estate only to have been given the widow? Second: Would he not have secured the property of the two daughters, which he directs to be invested upon land security, by charging it upon a portion of his own real estate, had he supposed he was only disposing of that real estate for and during the life of his

wife? The former inquiry, I answer in the negative; the latter in the affirmative.

I am of opinion that the judgment of the supreme court should be affirmed.

On the question being put, "Shall this judgment be reversed?" the members of the court voted as follows:

*For reversal:* Senators BARLOW, FOLSOM, HAND, HARD, JOHNSON, J. B. SMITH, S. SMITH, SPENCER, WHEELER, WILLIAMS and WRIGHT—11.

*For affirmance:* The PRESIDENT, and *Senators* BEERS, BURNHAM, EMMONS, JONES, PORTER, SANFORD, SCOVIL, TALCOTT and VAN SCHOONHOVEN—10.

Judgment reversed.