[No. 1896.]

COWELL ET AL. v. THE SOUTH DENVER REAL ESTATE COMPANY ET AL.

1. PRACTICE—FORMS OF ACTION—DISMISSAL.

Under the Code system a cause will not be dismissed because a party has brought his suit in equity when he ought to have brought it in law or *vice versa*. Nor because of the date at which it was filed with reference to the time when his rights accrued.

2. PRACTICE—EJECTMENT.

Where by will one-half interest in real estate was left to the widow for life with remainder to the children and the other half was left in fee to the children, the children could not maintain ejectment against the widow prior to partition, and an equitable suit is a proper remedy to ascertain the rights of the parties.

3. PRACTICE—ACTION TO SET ASIDE DEED—RETURN OF PURCHASE PRICE.

In an action to set aside a deed where it does not appear that plaintiffs received any of the purchase price, it is not necessary to offer to return the purchase price.

4. SAME—ACQUIESCENCE.

In an action to set aside a sale of real estate where the answer alleged acquiescence in the sale by plaintiffs which was denied by replication, it was sufficient to put that fact in issue without an averment of nonacquiescence in the original complaint.

5. PRACTICE—PARTIES—ACTION TO SET ASIDE DEED—WAIVER.

In an action against the purchasers to set aside a sale of real estate made by the widow as executrix, she is a proper and necessary party, but where the defendants fail to raise the objection either by demurrer or answer the objection is waived.

6. ESTATES OF DECEDENTS—POWERS OF EXECUTORS TO CONVEY.

An estate which descends to an heir by law or is devolved on him by will cannot be divested or taken away by the exercise of a power given to an executor unless the intention is clearly and unmistakably expressed, and its use essential to the execution of the evident purpose of the testator.

7. WILLS—CONSTRUCTION—INTENTION.

In the construction of a will, the intention of the testator will control regardless of the phraseology in which he has expressed his purpose.

8. WILLS—EXECUTORS—POWER OF DISPOSAL OF ESTATE.

Where a widow is vested by will with a life estate to one-half interest in real estate with remainder to the children and the other half is vested in fee in the children, a power to the widow as executrix to dispose of the property for the best interest of the estate, will be held to be a naked power and limited to the estate vested in her by the will, unless the words of the will clearly indicate a larger power, and a larger power is necessary to effectuate the intentions of the testator.

9. SAME—PLEADING.

Where a testator after directing his debts to be paid and certain bequests to his children, left one half of his residuary estate to his widow for life with remainder in fee to the children and the other half in fee to the children, and authorized the widow as executrix to dispose of any and all of the real estate upon such terms as in her judgment would be for the best interest of the estate, and authorized her to make deeds and provided that the same should vest in the grantees good title in fee, in an action by the children to set aside a conveyance of real estate made by the executrix, a complaint that avers that the executrix received from other sources more than enough money to pay all the debts and legacies, and shows that the sale was not necessary to carry out the purpose of the testator, stated a cause of action and it was error to refuse to allow plaintiffs to introduce any evidence to support such complaint.

*Appeal from the District Court of Arapahoe County.*

Mr. F. D. TAGGART and Messrs. WELLS & TAYLOR, for appellants.

Mr. A. B. SEAMAN and Mr. H. S. SILVERSTEIN, for appellees.

BISSELL, P. J.

The condition of the record precludes the determination of more than one question with some collateral inquiries which grew out of it. This is to be regretted because the suit suggests some other inquiries, and if we were able to express our conclusions about them, the subsequent progress of this

litigation would be very much facilitated.    The extraordinary way in which the case went off prevents it.    In order to illustrate the condition of affairs we observe before proceeding to state the contents of the bill, that the complaint was filed, issue tendered by answer and replication, and the cause went to trial.    When it was reached in its regular order and a witness was called, the objection was made that no evidence could be introduced under the complaint.    The trial judge took this view of the matter and judgment was rendered against the complainants.    The replication took issue with all the affirmative matters in the answer, so that in reality the naked question is, did the complainants or any of them state a case on which they were entitled to make proof?

We will now state generally, without attempting to recite in detail, the substance of the bill.    We do this because it is quite evident from the arguments of counsel, as well as from the disposition of the case below, that the court's view on one question led to the ultimate ruling.

In 1888, William Cowell died, leaving a widow and the complainants herein, his children, as his heirs and legatees, under a will by which he disposed of his estate.    Therein he provided that his just debts and the expenses of his last sickness and funeral should be paid; he then bequeathed unto his several children various sums amounting to $4,500. He then disposed of his residuary estate by a provision giving to the widow the use of half of the remainder for her life, and upon her death all the estate bequeathed to her for life should be divided share and share alike among the children then living, and the children of the deceased if any.    By an independent clause the other one half of the remainder he bequeathed absolutely to his children in equal parts.    He appointed his wife executrix without bond, and then inserted this provision:

" And I hereby expressly authorize and empower her my said executrix to dispose of any and all of real estate for such price and upon such terms as in her judgment shall be for the best interest of my estate, and for that purpose do

hereby expressly empower her to make, execute, acknowl-
edge and deliver any and all deeds of conveyance requisite
or necessary to carry into effect this power and authority to
sell, convey and dispose of my said real estate, and all such
conveyance of my real estate shall be effectual to vest in the
grantee or grantees named in such deed or deeds a good
and perfect estate in fee in the real estate so conveyed.
And I appoint my said wife Lydia to be testamentary
guardian of each of my children without bond."

The complaint charges that on the 26th of September the
will was admitted to probate and letters testamentary issued,
and then describes the estate. It is said to have consisted
of about $8,000 in moneys and personal property, and a fee
simple title to lots 17 to 22 in Block 127 East Denver, two
lots in Block 109, and certain parts of lots in Block 19.
The debts were alleged not to have exceeded $5,500. No
claims were presented against the estate except one amount-
ing to $315. The widow never filed an inventory nor com-
plied with the statute with reference to the administration
of estates. It is charged that within a year after Cowell's
death, Mrs. Cowell got from moneys belonging to the
personal estate and rentals, enough to pay all debts and
funeral expenses and a part of the legacies, to wit,
about $2,000. The bill then proceeds to aver that on the
5th of April, 1889, Mrs. Cowell, as executrix, sold and con-
veyed lots 31 and 32 in Block 109, and got therefor $65,000.
It then charges that in 1890, she undertook to sell to one
Price lots 17 to 22, in Block 127, for the purchase price of
$140,000, reciting that $15,000 was actually paid. Follow-
ing these averments there were divers allegations respecting
the attempted payment of the remainder of the $125,000,
charging that part of this sum was paid by deeding lands of
little value and on which there were incumbrances whereby
the executrix only got equities, no actual sale having been
made, but only a barter and an exchange, and charging
divers and sundry fraudulent acts on the part of McIntosh
& Mygatt who were the moving parties in the enterprise.

and who acted on behalf of The South Denver Real Estate Company, in which the title ultimately vested. We do not propose to state what these allegations were because we do not intend to decide any particular question that could possibly arise out of them. The propositions suggested by these matters can only be properly considered and equitably determined on the incoming of proof, should it be found at the trial that the proof as offered can be admitted under the issues and in the form in which it may be tendered. It may be well here to state that part of the complainants were infants and sued by their next friend. The others were of adult age, becoming such after the death of the father, but how long before the filing of the bill we do not know. This is a matter purely of speculation from the terms of the will and the date of the papers. The answer set up sundry and divers matters in defense, among others an application by the widow for leave to borrow $15,750, and to pledge the note of Price given for a part of the purchase price of the property, and an allegation that this order was made. The answer then proceeds to set up that this money was borrowed of one Wood, and that some of the complainants signed the note, and that it afterwards passed into the possession of the National Bank of Commerce, with which McIntosh & Mygatt were connected, and under the control of either one or both of them; an ultimate sale of the note and the collateral, whereby the title to the Price note became vested in McIntosh & Mygatt, or the South Denver Real Estate Company, or all three as the case may be. In the absence of evidence we may be permitted to conceive this plea was evidently put in to admit proof of conduct which would estop the adults from maintaining their action. Whether this would be enough or not we do not even suggest because of the absence of testimony, though it is quite manifest the allegations alone were worthless as a defense. There were also sundry averments respecting the knowledge and acquiescence of the adult plaintiffs with respect to which the same suggestions may be made.

Sundry objections were offered to the introduction of testimony. We do not deem it wise to consider many of them lest what we say may be found inapplicable when the proof comes in, and our suggestions be not only matters of supererogation but wholly irrelevant. We shall only very briefly refer to one or two matters which would possibly be enough to sustain the judgment on the appeal in case we disagreed with the appellees on the main proposition. We do not say this is true, but we say even assuming them to be true and to be sufficient, yet as we look at the record they are at present inapplicable. The first suggestion is that the case is not one for equitable cognizance; that the plaintiffs could maintain ejectment and therefore the bill ought to be dismissed. We do not believe it. In the first place the parties have proceeded to state the facts in their complaint, and we have yet to learn that under any code system which prevails at the present time, the party is to go out of court because he has brought his suit in equity when he ought to have brought it in law or *vice versa*, and that he is to be barred or suffer the misfortune which may come from a dismissal of his suit because of the date at which it was filed with reference to the time when his rights accrued. Aside from this, however, we do not believe ejectment could be maintained. The plaintiffs were not entitled to possession in that sense which would permit them to bring an action in ejectment. It will be observed that there had been no partition of the estate,—the widow took a life interest in half of it and the children a fee in the balance with a remainder after the life estate was exhausted. It is quite impossible for us to see that they were entitled to these particular lots or to the possession of them, and that the life estate of the widow did not attach. Until legal determination that question was an open one. If the widow had a life interest in these lots and it is possible she might have asserted it, her deed undoubtedly conveyed the right of possession and ejectment would not lie. Where there is an undivided estate and the plaintiffs have a fee in part of it, and the widow a life estate in the balance, we do not see how ejectment could be

maintained prior to partition, and we believe that an equitable suit is a proper remedy to ascertain the rights of the parties. We have grave doubts respecting the form and complexion of this bill and the nature of the relief which it seeks, that is, we doubt whether the parties have drafted a bill which will in the end permit a complete determination of the rights of the parties. In some respects it seems to us their remedy has been misconceived and the bill inaptly drawn, although perhaps it may be broad enough to entitle them to a judicial determination of the character of the deed. How they will get any substantial relief without the presence of all the parties we do not know. The bill could with prudence and safety be redrafted along somewhat different lines. This is of course for counsel to determine, but we state it because some of our suggestions would seem to be inappropriate to the bill as drawn.

The appellees also object because there was no offer to return the price and no allegation that there was no acquiescence on the part of the adult plaintiffs. We do not discover from the bill or the answer, in the absence of proof at any rate, that the plaintiffs got any part of the purchase price. It is quite true the answer avers the adult plaintiffs did acquiesce, but that is a matter of proof, and having been denied by the replication, we cannot assume the fact in order to sustain the judgment. It is quite clear there would have to be some proof of the receipt of the money to uphold the contention.

The objection is also made that the executrix and widow is not a party. We think she ought to be in the suit. There is no question concerning this proposition. This, however, affords no basis for the judgment because these plaintiffs could maintain a bill as against the subsequent grantees of the estate, assuming that the facts or the law warrants it without the presence of the executrix, unless they object because of the failure to join her. The matter probably sufficiently appeared on the face of the complaint to compel a demurrer, but if it did not, it should have been set up by answer. The

failure to take advantage of a defect of parties undoubtedly waives the objection.

This brings us to the fundamental proposition, and the only one about which we propose to say very much: The power of the widow and executrix to dispose of the estate. Notwithstanding the multitude of cases cited by the appellees which decide the question under divers conditions, though generally in cases where the power has been definitely granted but to be exercised for definite purposes, we remain of the opinion that according to the weight of authority, as well as the volume and force of it, the law is not with them. The matter has been presented in various ways, and while most of the decisions are applied and expressly limited to particular facts, we believe it may be safely said that an estate which is cast on the heir by the law or devolved on him by will, cannot be divested nor taken away by the exercise of a power given to a representative unless the intention is most clearly and most unmistakably expressed, and its use essential to the execution of the evident purposes of the testator. There is a very wide difference between the rule, which controls in the interpretation of deeds and of wills. We must ascertain what the intention of the testator was, and being able to gather that intention, it will control regardless of the phraseology in which he has expressed his purpose. This principle has been declared by the supreme court of the United States in no unmistakable terms. It was said, "in the American cases there seems to be less confusion and nicety on this point; and the courts have generally applied to the construction of such powers the great and leading principle which applies to the construction of other parts of the will, to ascertain and carry into execution the intention of the testator." *Peter v. Beverly*, 10 Pet. 532, 563.

It will be found wholly unnecessary to depart from the terms of the will in order to determine the intention and the extent of the power. As we proceed it will be observed that the power is limited by reason of a condition resulting from the devise, and it will be wholly unnecessary to attempt to

ascertain what the intention of the testator was in order to reach the conclusion that there was a limitation upon the power. Doubtless our position might be supported by a consideration of the terms of the instrument and of the representative capacity of the widow. Power was not given her as a legatee, but as an executrix. Under these conditions the grant of power was a grant uncoupled with an interest because the interest was unessential to the execution of the power and was simply a naked one to carry out the objects and purposes of the will. This position is sustained by many authorities and under the terms of this devise we believe the principle is clearly applicable. It will be noticed by recurring to the terms of the instrument that the power was given to the executrix as such, and manifestly embraces only the right to make a sale for the best interests of the estate. This is a limitation upon the right to exercise it and probably on the limit of its duration. *Marsh v. Wheeler*, 2 Edwards' Chan. 155; *Gregg v. Currier*, 36 N. H. 200; *Dexter v. Sullivan*, 34 N. H. 478; *Fluke v. Executors of Fluke et al.*, 16 N. J. Equity, 478; *Hope v. Johnson*, 2 Yerger, 123; *Sharpsteen v. Tillou*, 3 Cowen, 651; *Moores v. Moores*, 41 N. J. Law, 440; *Hovey v. Chisholm*, 9 N. Y. Supp. 671; *Ward v. Barrows*, 2 Ohio State, 241.

A good many other authorities might be cited along the same line, but these are enough to indicate the general course which the decisions take and the doctrine which underlies the whole of them. A power of this description so far as we are able to gather is always limited to the purposes which the testator evidently entertained. There is a recognized difference between a power coupled with an interest, and one without it, into which we need not enter, because here the widow took an estate by the express terms of the devise. The power was granted to her as an executrix and was evidently given only for the purpose of carrying out the testator's intentions. We do not have to determine whether the situation and condition of the estate warranted the exercise of the power. It has sometimes happened where the estate was to be sold and reinvested, or where it was to be sold for the purposes of di-

vision and partition, a different construction has been given to the terms of the power, but this is only in subordination to the general principle already expressed, to wit, what were the purposes and intentions of the testator, and how broadly must the power be construed in order to effectuate them. On the allegations of the bill these questions are presumably out of the case. The bill charges that the debts were only a few thousand dollars and the legacies only $4,500 and that no debts were proven against the estate, showing presumptively that the debts and legacies were all paid. The bill likewise shows, and under the present condition of affairs we must assume it to be true because the plaintiffs were not permitted to offer proof about it, and the case went off on the hypothesis that the complaint did not state a cause of action, the widow received sixty-odd thousand dollars besides the cash on hand at the date of the testator's demise. This was largely more than enough to pay the debts and all specific legacies and leave the balance of the estate to go as it had been devised. If this is true, and we must assume it for our present purposes, it necessarily follows that the power need not have been exercised as to the lots in controversy in order to carry out any purpose or intention deducible from the terms of the instrument. This proposition being out of the way, we come now to what in our view is the fundamental question. As already intimated the heir can never be disinherited except by an express devise or by a purpose declared in the instrument from which there is no escape. This principle is old and well settled and we refer only to a single text-book and two or three authorities concerning it. 1 Redfield on Wills (2d ed.), *425, note 5; 1 Redfield on Wills (2d ed.), *434, § 18; *Areson v. Areson*, 3 Denio, 458, 461; *Allen's Executors v. Allen*, 18 How. 385.

Starting with this fundamental principle the balance of the journey and the authorities which we shall cite will be along a well-defined highway.

On the death of Cowell and by his will the estate was divided into two parts, of which the children took the fee in

one half, the widow a life estate, and the heirs a fee in the remainder. We do not undertake to determine, nor do we decide whether this statement as to the widow's estate is absolutely and entirely accurate. We do not undertake to determine in advance whether a failure on her part to elect that she would not take under the will deprived her of the fee in the one half of the estate, to which under the statute she was entitled. We have already decided that the testator may not devise away from the widow the absolute one half, though in that case there was an election and an assertion. We do not concede it would make any difference whether the widow took a life estate in one half of it, or an absolute fee in one half of it; in either event, as we read the cases, her power would only be coextensive with the estate which was bequeathed to her, unless to carry out the evident purposes of the testator a broader power must be given her, which she might exercise to the disinheritance of the heirs, or the destruction of the estate given to the legatees. This question has been before the supreme court of the United States and we are satisfied to begin and end our examination with the opinions of that court when they are unanimous or reasonably so. In the two cases which we shall cite from that court it is undoubtedly held that where a power of disposal accompanies a devise of a life estate, the power is limited to whatever acts the person holding a life estate can perform consistent with the estate devised, unless the words clearly indicate a larger power, and a larger power must be exercised in order to effectuate the intentions of the testator. In the opinion of that court construing a will and granting a power in the words, " to do with as she sees proper before her death, " these words only confer a power to deal with the property in such manner as is consistent with the estate granted. As the court puts it, " whatever power of disposal the words confer is limited by the estate with which they are connected." *Brandt v. Virginia Coal & Iron Co.*, 93 U. S. 326. This doctrine was afterwards affirmed and this express language approved in a very similar case. *Giles v. Little*, 104 U. S. 291.

*Vide* also, *Patty v. Goolsby*, 51 Ark. 61; *King v. Whiton*, 15 Wis. 685; *Brearley v. Brearley*, 9 N. J. Equity, 21; *Iowa Loan & Trust Co. v. Holderbaun*, 86 Ia. 1.

From these authorities it is quite clear that a power given to an executrix in terms like those used in this will, and under like circumstances and coupled with a life estate, gives no right to make any sale or disposition of the property unless such sale or disposition is necessary to carry out the express provisions of the will and is essential to the due administration of the estate. We put in this limitation not because the authorities require us to limit it, for they seem to broadly hold that wherever there is a power of sale as in this case coupled with a devise of a life estate to the representative who is to exercise it, it may be only exercised in a manner consistent with the estate granted, yet we are not in the present litigation compelled to go to this extent. It is enough for us to hold that the power given to the executrix could only be exercised with reference to the estate devised, because it is quite evident from the allegations of the bill and we assume the proof will accord with it, that no other disposition was essential or necessary in order to effectuate the testator's purpose, to wit, pay his debts and pay the specific legacies granted. Under these circumstances the heirs may not be disinherited or the legatees deprived of their legacies by the use of this power which can only be exercised for the best interests of the estate. The estate as we understand it may be absorbed and used for the purposes of distribution or the payment of debts. Where as in this case, land is specifically devised, it is in no sense, as we look at it, part of the estate with reference to which the executrix is given power; it has passed by the terms of the devise to the legatees, subject only to the power of the executrix either in the exercise of that specifically granted, or under statutory authority to appropriate it to the payment of debts. It is quite clear when once it appears that no sale was necessary to pay debts or legacies, that the legatees must take the undisposed of balance, subject possibly to a life interest in some or all of it, free and clear from the power of

disposition by the representative.  As the case stands in the bill, we believe the complainants had a right to offer proof. We further believe that the proof being adequate and in accordance with the averments, they would be entitled to a decree adjudging this conveyance invalid.  It would certainly be true as to the minor heirs who are peculiarly wards of chancery.  Whether it would be true as to those who have become of adult age, or whether there are any facts or circumstances which would estop them either by acquiescence, the receipt of money or otherwise, we do not undertake to say, because there is nothing before us which will afford a basis for the decision.

We have gone as far as we believe the situation of the record warrants, and with these suggestions the case must be reversed and remanded.

*Reversed.*