Elizabeth Teresa Higgins et al., complainants,

v.

Elizabeth Mispeth et al., defendants.

[Decided September 13th, 1935.]

Messrs. *Hudspeth & Harris,* for the complainants.

Messrs. *Kappes & Hille,* for the defendants.

Egan, V. C.

Jacob Bonisch, late of Weehawken, New Jersey, died on February 25th, 1918, leaving a last will and testament. Sur-

viving him were his widow, Elizabeth (a second wife by whom there were no children), and six children by his first wife, who are: Margaret Burns, Mary Williams, John Bonisch, Annie Bonisch (who subsequently died testate), Peter Bonisch (who died December 31st, 1925, intestate, leaving a widow and four children, the complainants), and Elizabeth Mesbach; a son, Jacob, Jr., predeceased the testator, leaving him surviving him his wife, Annie.

The complainants seek a construction of the second and third paragraphs of the will of Jacob Bonisch, which read as follows:

"*Second*—I give, devise and bequeath all my real and personal property wherever it may be, to my wife, Elizabeth *Bonich*, absolutely.

"*Third*—After the death of my said wife, I devise and bequeath all my real and personal estate and effects wheresoever it may be, to my daughter, Mary Williams, my daughter, Elizabeth Mispeth, my daughter, Annie *Bonich*, my daughter, Margaret Burns, my son, Peter *Bonich*, my son, John *Bonich*, and my daughter-in-law, Annie *Bonich*, share and share alike."

The complainants contend that it was the intention of the testator to give his wife, Elizabeth Bonisch, a life estate only, with remainder over to his children and daughter-in-law. The defendants, being the children and daughter-in-law named in paragraph third of the will, and Charles William Kappes, as executor of the will of Elizabeth Bonisch, contend that paragraph second gave the wife, Elizabeth Bonisch, an absolute estate in fee-simple, and that paragraph third is, accordingly, ineffective.

The following stipulation of facts was submitted by counsel appearing herein:

"The following facts are agreed upon between the parties:

"1. That Jacob Bonisch, late of the township of Weehawken, in the county of Hudson and State of New Jersey, made and executed his last will and testament on the 23d day of November, 1916, a copy of which is annexed to the bill of complaint.

"2. That Jacob Bonisch died on February 25th, 1918, and that the aforesaid last will and testament was admitted to

probate by the surrogate of Hudson county on March 13th, 1918.

"3. That said last will and testament was prepared by one John Glueck, Jr., now deceased, who was then engaged in the real estate business in the then town of Union, county of Hudson and State of New Jersey.

"4. That at the time the said will was drawn, the children of the decedent and the daughter-in-law of the decedent, who are named as beneficiaries in paragraph 'third' of the said will, were all alive and on very friendly and intimate terms with the testator, Jacob Bonisch.

"5. That Elizabeth Bonisch, the beneficiary named in paragraph 'second' of the will, was the second wife of Jacob Bonisch, by whom he had no children.

"6. That all of the children named in paragraph 'third' of the said last will and testament, were all the children of the said Jacob Bonisch by his first wife.

"7. That Elizabeth Bonisch, the second wife, of the said Jacob Bonisch, who is named as beneficiary in paragraph 'second' of the will, survived the said Jacob Bonisch, but departed this life on the 23d day of December, 1934.

"8. That on numerous occasions throughout her lifetime, the said Elizabeth Bonisch declared that Jacob Bonisch had informed her that she was to enjoy the income of his estate during her lifetime, but that after her death he had provided for his children and daughter-in-law, Annie Bonisch, who are named as beneficiaries in paragraph 'third' of the will.

"9. That the said Elizabeth Bonisch on numerous occasions throughout her natural life, had informed the beneficiaries named in paragraph 'third' of the will, that their father, Jacob Bonisch, had provided for them in his will, after her death."

The situation which confronts us is not wholly unlike the circumstances related in *Galante* v. *Silverstein, 98 N. J. Eq. 52,* and in *Kutschinski* v. *Sheffer, 109 N. J. Eq. 659.*

In *Galante* v. *Silverstein, supra,* the will contains provisions as follows:

"*Second*—I give, devise and bequeath unto my beloved wife, Lucia—all the residue of my real or mixed estate—to have and to hold the same to her executors, administrators or assigns forever without any litigation on the part of my children or their heirs.

"*Third*—I give and bequeath unto each and every one of my surviving children all the rest and remainder or my estate, real, personal or mixed, after my wife, Lucia G.'s death, share and share alike."

The court held that the devise to the testator's wife, vested in her an estate in fee. The devise over was declared void.

In *Kutschinski* v. *Sheffer, supra*, appear the following:

"*First*, after my lawful debts are paid, I give, devise and bequeath to my beloved Wife Margaretha Kutschinski nee Meyer all my Estate and Property Real and personal Property Where Soever the Same may be and of *Wat* Soever kind it May consist of at the time of My dead forever.

"*Second*, but in Case my Wife Margaretha H. Kutschinski gets Married again then She Shall receive only one third (1 3) from my Estate left forever.

"*Third*, and after the decease of My Wife Margaretha H. Kutschinski all My Estate Shall be divided amongst our Children, or their respective heirs Share and Share alike * * *."

In this last cited case, Vice-Chancellor Fielder made this observation:

"The third clause is in irreconcilable conflict with the first and second clauses, for having by the 'first and second clauses given to his wife an estate in fee * * * the testator proceeded to make other and further disposition of that which he had previously disposed of. What he had in mind can only be conjectured, but instead of resorting to surmises I am guided by decisions of our courts which settle authoritatively that where a testator has manifested an intent to vest an absolute fee-simple in the first taker, a subsequent limitation thereof is void as inconsistent with the rights of the first taker. *Den* v. *Gifford, 9 N. J. Law *46; Annin's Ex'rs* v. *Vandoren's Adm'r, 14 N. J. Eq. 135; McClellan* v. *Larchar, 45 N. J. Eq. 17; Rodenfels* v. *Schumann, 45 N. J. Eq. 383; Dodson* v. *Sevars, 52 N. J. Eq. 611; affirmed, 53 N. J. Eq. 347; Tuerck* v. *Schueler, 71 N. J. Law 331; McCloskey* v. *Thorpe, 74 N. J. Eq. 413; Bennett* v. *Association, &c., for the Friendless, 79 N. J. Eq. 107;*

*Henderson* v. *McGowan, 91 N. J. Eq. 359; Brohm* v. *Berner, 95 N. J. Law 85; Galante* v. *Silverstein, 98 N. J. Eq. 52."*

The outstanding rule of testamentary construction is to ascertain what the intent of the testator was, and having ascertained it, then give it effect. *Griscom* v. *Evens, 40 N. J. Law 402; affirmed, 42 N. J. Law 579; McDonald* v. *Clermont, 107 N. J. Eq. 585; Camden Safe Deposit and Trust Co.* v. *MacMullan, 112 N. J. Eq. 574; Coffin* v. *Watson, 78 N. J. Eq. 307; affirmed, 79 N. J. Eq. 643.*

In *Fink* v. *Harder, 111 N. J. Eq. 439,* it was observed that:

"Although by emphasizing some parts of the will to the exclusion of others a different conclusion might be reached, the court cannot do so; it must read the will as a whole. See *West Side Trust Co.* v. *Giuliano, 106 N. J. Eq. 475; 151 Atl. Rep. 275; Jones' Ex'rs* v. *Stiles, 19 N. J. Eq. 326."*

In an endeavor to construe the intention of the testator, the court will regard the entire will and consider all the provisions of the instrument; its efforts will not be confined to an examination or search of a particular form of words alone.

"Courts, in construing a will, may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears, on a full view of the whole will, to have been the intention of the testator. *Marshall* v. *Hadley, 50 N. J. Eq. 547; Peer* v. *Jenkins, 102 N. J. Eq. 235; Gluckman* v. *Roberson, 115 N. J. Eq. 522.*

The agreement of facts herein indicates:

"8. That on numerous occasions throughout her lifetime, the said Elizabeth Bonisch declared that Jacob Bonisch had informed her that she was to enjoy *the income* of his estate during her lifetime, but that after her death he had provided for his children and daughter-in-law, Annie Bonisch, who are named as beneficiaries in paragraph 'third' of the will.

"9. That the said Elizabeth Bonisch on numerous occasions throughout her natural life, had informed the beneficiaries named in paragraph 'third' of the will, that their

father, Jacob Bonisch, *had provided for them in his will,* after her death."

Vice-Chancellor Berry, in *Swetland* v. *Swetland, 100 N. J. Eq. 196,* said:

"One of the general rules of construction is that words 'are, in all cases, to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative.' (Jarman's Twenty-Four Rules of Construction, No. XVI), 'and words which it is obvious are miswritten may be corrected.' (*Id.* No. XX.)

" '*It is not a word, it is the intent of the testator* manifested in his will that is sacred and must prevail.' *Brown* v. *Mugway, 15 N. J. Law 330; Elizabeth Trust Co.* v. *Clark, 96 N. J. Eq. 550; 126 Atl. Rep. 604.*

" '*Where the testator's intention is manifest from the context of the will and surrounding circumstances,* but is endangered and obscured by inapt and inaccurate modes of expression, the language will be subordinated to the intention, and in order to effectuate such intention, as far as possible, the court may depart from the strict words, and read a word or phrase in a sense different from that which is ordinarily attributed to it, and for such purpose may mold or change the language of the will, such as by rejecting superfluous, absurd, or repugnant words or phrases, or restricting them in their application; by supplying omitted words or phrases; by transposing words, expressions, or sentences; or by substituting one word or phrase for another. This rule, however, applies only where it is necessary in order to effectuate the testator's intention, which is clearly apparent, but which has been defectively expressed in the will.' *40 Cyc. 1399.*" It is laid down that: "The language employed in a single sentence is not to control as against the evident purpose and intent as shown by the whole." *28 R. C. L. 216.*

The will under consideration was drawn by a layman who evidently was not informed in, or concerned with fine or technical, or legal distinctions, or rules of construction. That fact in itself is a circumstance to be considered. *Wunderlich* v. *Bleyle, 96 N. J. Eq. 135; Crocker* v. *Crocker, 112 N. J. Eq. 203.*

In the construction of wills, effect is always given to the intention of the testator and there will be no adherence to the strict technical construction of words and phrases, unless such intention runs counter to some recognized rule of law. *Genung* v. *Best, 100 N. J. Eq. 250.*

In *Coyle* v. *Donaldson (Court of Errors and Appeals), 91 N. J. Eq. 138,* Mr. Justice Black observed that:

"The meaning and intention of the testator must be determined, not by fixing the attention on single words in a will, but by considering the entire will and surroundings of the testator, when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature."

In *West Side Trust Co.* v. *Giuliano, supra,* Vice-Chancellor Backes said:

"In the will under construction the testator, after giving to the nephew what otherwise would be an absolute estate, cut it down and put an end to it at the nephew's death by giving the residue to his issue and over to the nieces upon failure of issue. The gift in remainder, though it be in a different paragraph, is as pregnant of meaning as the language of the absolute gift to the nephew and cannot be ignored or discarded because it is in conflict with the initial gift. Apparent conflict in provision must be reconciled so that the whole may stand and all parts of the will be given their full significance. The applicable rule of construction is declared in *Jones' Executors* v. *Stites, 19 N. J. Eq. 324,* where the chancellor, in addressing his remarks to the language of a will substantially like the one under consideration, said: 'The terms on which this residue is given to the two daughters, would give them the absolute estate, were it not for the subsequent limitations; they are adapted to that purpose, and nothing but a clear expression of a different intent would control them. But it is well settled, that a devise of lands or bequest of chattels, by words which clearly would give the absolute estate, will be construed into a devise or bequest for life only, if the will contains words giving it to another upon the death of the first taker.' Vice-Chancellor

Gray adopted the ruling in *Peirsol* v. *Roop, 56 N. J. Eq. 739."*

Vice-Chancellor Howell, in *Stout* v. *Cook, 77 N. J. Eq. 153,* said:

"The paramount rule for the construction of testamentary instruments is that the court must strive to ascertain the intention of the testator as expressed by the words of the instrument. Such intention, if so ascertainable, will prevail over technical rules and will disregard the common, ordinary meanings of words and adopt such meanings as can be deduced from the testator's intention. This has long been the settled rule in England and America and needs no citation of authorities for its support."

In *Hollinshead* v. *Wood, 84 N. J. Eq. 492,* the court of errors and appeals said:

"The fundamental rule applicable to such a situation has been stated to be that courts, both of law and equity, will construe words according to their strict and primary acceptation, unless from their immediate context, or from the intention of the parties apparent on the face of the instrument, the words appear to have been used in a different sense; or unless in their strict sense they are incapable of being carried into effect." (Citing *Stout* v. *Cook, supra.*)

In *Noice* v. *Schnell, 101 N. J. Eq. 252,* Mr. Justice Katzenbach, speaking for the court of errors and appeals, said:

"This principle is well stated in the article of Vice-Chancellor Wigram on Extrinsic Evidence in the aid of Interpretation of Wills (page 142), where he says:

" 'For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.'

"This principle has been followed in this state in the following cases: *German Pioneer Verein* v. *Meyer, 70 N. J. Eq. 192; 63 Atl. Rep. 835; affirmed, 72 N. J. Eq. 954; 67 Atl. Rep. 23; De Camp* v. *Dobbins, 29 N. J. Eq. 37: affirmed, 31 N. J. Eq. 671; Attorney-General* v. *Moore's Executors, 19 N. J. Eq. 503; State* v. *Ready, 78 N. J. Law 599.*"

I cannot resist the conclusion that it was the intention of the testator to make provision for his wife, and his children. His wife, the stepmother of his children, so declared and the facts stipulated herein make that intention of the testator quite clear. I think that the testator's intention would be defeated by voiding or rendering ineffective the third clause of his will. If that clause were disregarded, I feel, that such determination would be in direct conflict with the principle expressed in *Rowley* v. *Currie, 94 N. J. Eq. 606,* where the court used this language:

"Except in an entirely plain case, the court will not construe a will so as to cut off from inheritance or benefit any direct descendant of a testator. *Brooklyn Trust Co., 196 App. Div. (N. Y.) 355.*"

And—

"The rule is fundamental that, unless the intent of the testator to disinherit them be clear and palpable, the heirs-at-law will not be disinherited. *Birdsall* v. *Applegate, 20 N. J. Law 244; Graydon* v. *Graydon, 25 N. J. Eq. 561; Woodruff* v. *White, 78 N. J. Eq. 410;* affirmed by this court in *79 N. J. Eq. 225; Areson* v. *Areson, 3 Den. 458.*" *Dorsett* v. *Vought, 89 N. J. Law 303.*

I am firmly convinced that the scrivener of the will failed to properly express the testator's intention and that it was the primary intent of the testator to give his wife, Elizabeth, a life estate, and his children and daughter-in-law, named in paragraph "third" of the will, the fee in remainder.

I shall advise an order to conform with these conclusions.